## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MILTON AL STEWART,<br>Acting Secretary of Labor,<br>United States Department of Labor,[1]<br><br>Plaintiff,<br><br>v.<br><br>LOCAL 1694, INTERNATIONAL<br>LONGSHOREMEN'S ASSOCIATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No. 19-2235-RGA** |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DAVID C. WEISS
United States Attorney

Jesse S. Wenger
Assistant United States Attorney
1313 N. Market Street
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
jesse.wenger@usdoj.gov
*Attorneys for Plaintiff*

Dated:   January 22, 2021

---

[1] Milton Al Stewart was designated to serve as the Acting Secretary of Labor, effective January 20, 2021. The government has updated the case caption to reflect that designation. *See* Fed. R. Civ. P. 17(d).

**TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS .......................................................... 1

II.   SUMMARY OF THE ARGUMENT ............................................................................... 1

III.  FACTUAL AND LEGAL BACKGROUND ..................................................................... 2

    A.   Statement of Facts.......................................................................................................2

    B.   Standard of Review......................................................................................................6

    C.   The Labor-Management Reporting and Disclosure Act of 1959....................................7

IV.   ARGUMENT................................................................................................................. 8

    A.   Defendant Unreasonably Applied the 24-Month Rule in the May 2019 Officer Elections Because Defendant Failed to Provide Adequate Notice. ...................................................... 8

    B.   Defendant Failed to Uniformly Impose the 24-Month Rule...........................................12

    C.   Defendant Improperly Deemed Benjamin Wing Ineligible to Run for Office Because Wing's Past Conviction Did Not Qualify as Rape under Section 504 of the Act.......................................14

    D.   Defendant's Title IV Violations May Have Affected the Outcome of the May 7, 2019, Election. 18

V.    CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Am. Fed'n of Musicians v. Wittstein*,
379 U.S. 171 (1964) ................................................................................ 7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................ 7

*Berman v. Local 107, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*,
237 F. Supp. 767 (E.D. Pa. 1964) ......................................................... 17

*BLE Int'l Reform Comm. v. Sytsma*,
802 F.2d 180 (6th Cir. 1986) ................................................................. 9

*Chao v. Amalgamated Transit Union*,
141 F. Supp. 2d 13 (D.D.C. 2001) ....................................................... 13

*Chao v. Bremerton Metal Trades Council*,
294 F.3d 1114 (9th Cir. 2002) ............................................................... 9

*Descamps v. United States*,
570 U.S. 254 (2013) .............................................................................. 15

*Donovan v. Blasters, Drillrunners & Miners Union, Local No. 29*,
521 F. Supp. 595 (S.D.N.Y. 1981) ....................................................... 20

*Donovan v. CSEA Local Union 1000*,
594 F. Supp. 188 (N.D.N.Y. 1984) ....................................................... 8

*Donovan v. CSEA Local Union 1000*,
761 F.2d 870 (2d Cir. 1985) ................................................................... 9

*Donovan v. Local 120, Laborers' Int'l Union of N. Am.*,
683 F.2d 1095 (7th Cir. 1982) ............................................................... 9

*Donovan v. Nat'l Transient Div., Int'l Bhd. of Boilermakers*,
736 F.2d 618 (10th Cir. 1984) ............................................................... 9

*Donovan v. Sailors' Union of the Pac.*,
739 F.2d 1426 (9th Cir. 1984) ............................................................... 8

*Herman v. Am. Postal Workers Union*,
995 F. Supp. 1 (D.D.C. 1997) .............................................................. 14

*Herman v. Local 1695, United Auto., Aerospace & Agric. Implement Workers of Am.*,
111 F. Supp. 2d 602 (E.D. Pa. 2000) ................................................... 14

ii

**Cases (cont'd)**                                                             **Page(s)**

*Herman v. N.Y. Metro Area Postal Union*,
30 F. Supp. 2d 636 (S.D.N.Y. 1998) ................................................................. 12

*Herman v. Sindicato de Equipo Pesado*,
34 F. Supp. 2d 91 (D.P.R. 1998) ................................................................. 9, 10

*Lamont v. New Jersey*,
637 F.3d 177 (3d Cir. 2011) ................................................................. 6

*Local 3489, United Steelworkers of Am. v. Usery*,
429 U.S. 305 (1977) ................................................................. 8

*Martin v. Local 101, Transport Workers Union*,
No. 91-1871, 1992 WL 394175 (E.D.N.Y. Dec. 9, 1992) ....................................... 9

*Mathis v. United States*,
136 S. Ct. 2243 (2016) ................................................................. 16, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ................................................................. 6

*Moncrieffe v. Holder*,
569 U.S. 184 (2013) ................................................................. 15

*Reich v. Local 1, American Postal Workers' Union*,
No. 93-5167, 1994 WL 110610 (N.D. Ill. Mar. 31, 1994) ................................. 11, 12

*Noble v. Sombrotto*,
525 F.3d 1230 (D.C. Cir. 2008) ................................................................. 9

*Perez-Gonzalez v. Holder*,
667 F.3d 622 (5th Cir. 2012) ................................................................. 16

*Sec'y U.S. Dep't of Labor v. Am. Future Sys., Inc.*,
873 F.3d 420 (3d Cir. 2017) ................................................................. 9

*Sekhar v. United States*,
570 U.S. 729 (2013) ................................................................. 18

*United States v. Abdullah*,
905 F.3d 739 (3d Cir. 2018) ................................................................. 15

*United States v. Beros*,
833 F.2d 455 (3d Cir. 1987) ................................................................. 15

*United States v. Rider*,
282 F.2d 476 (9th Cir. 1960) ................................................................. 16

iii

*United States v. Romero,*
    2013 WL 12086229 (C.D. Cal. Apr. 9, 2013) .........................................................17

*United Union of Roofers, Waterproofers & Allied Workers, Union No. 33 v. Meese,*
    823 F.2d 652 (1st Cir. 1987) ................................................................................ 17

*Usery v. Int'l Org. of Masters, Mates & Pilots, Int'l Marine Div.,*
    422 F. Supp. 1221 (S.D.N.Y. 1976) ..................................................................... 19

*Usery v. Local 2047, Int'l Bhd. of Elec. Workers,*
    1976 WL 1684 (D. Minn. Nov. 24, 1976) ............................................................. 13

*Williams v. Att'y Gen.,*
    880 F.3d 100 (3d Cir. 2018) ................................................................................. 15

*Wirtz v. Hotel, Motel & Club Emps. Union, Local 6,*
    391 U.S. 492 (1968) ................................................................................... 7, 18, 19

**Federal Statutes**

29 U.S.C. § 481 ................................................................................................. *passim*
29 U.S.C. § 482 ......................................................................................... 6, 7, 18, 20
29 U.S.C. § 504 ................................................................................................. *passim*
29 U.S.C. § 521 ............................................................................................................ 6

**State Statutes**

11 Del. C. § 761 ......................................................................................................... 17
11 Del. C. § 768 ................................................................................................. *passim*

**Regulations**

29 C.F.R. § 452.34 ..................................................................................................... 18
29 C.F.R. § 452.35 ....................................................................................................... 8
29 C.F.R. § 452.53 ............................................................................................... 7, 9, 12

**Rules**

Federal Rule of Civil Procedure 12 ............................................................................ 1
Federal Rule of Civil Procedure 30 .......................................................................... 11
Federal Rule of Civil Procedure 56 ...................................................................... 1, 6

iv

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Milton Al Stewart, Acting Secretary of Labor, United States Department of Labor ("Plaintiff" or "the Secretary"), submits this Motion for Summary Judgment and in support thereof states as follows:

## I.  NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff commenced this lawsuit against Local 1694, International Longshoremen's Association ("Defendant" or "Local 1694") on December 6, 2019.  (D.I. 1.)  The Complaint alleges multiple violations of Section 401(e) of the Labor-Management Reporting and Disclosure Act of 1959 ("the LMRDA" or "the Act"), that may have affected the outcome of Local 1694's May 7, 2019, officer elections for the offices of President, Vice President, Recording Secretary, Financial Secretary, Business Agent, three Executive Board Members, and three Auditing Committee Members.  Defendant responded to the Complaint by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (D.I. 9, 10.)  The Court denied Defendant's motion to dismiss in its entirety.  (D.I. 16, 17.)  Plaintiff now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 and requests that the Court declare Defendant's May 7, 2019, officer elections void and order Defendant to conduct a new election under the Secretary's supervision.

## II.  SUMMARY OF THE ARGUMENT

1.    Undisputed facts establish that Defendant violated Section 401(e) of the Act by unreasonably applying the 24-Month Rule as it failed to enforce that rule in the 2010, 2013, and 2016 elections and then enforced it for the first time during the May 2019 officer election without giving its members adequate notice to comply with the requirement.  That violation may have affected the races for the offices of President, Vice President, Recording Secretary, Financial Secretary, Business Agent, three Executive Board Members, and three Auditing Committee Members.

1

2.      Undisputed facts establish that Defendant violated Section 401(e) of the Act by failing to uniformly impose the 24-Month Rule when it failed to take the necessary steps to ensure uniform application of that rule and when it applied that rule to its members inconsistently.  That violation may have affected the races for the offices of President, Vice President, Recording Secretary, Financial Secretary, Business Agent, three Executive Board Members, and three Auditing Committee Members.

3.      Undisputed facts establish that Defendant violated Section 401(e) of the Act when it deemed Benjamin Wing ineligible to run for office because Wing's past Delaware state conviction for unlawful sexual contact in the second degree, in violation of 11 Del. C. § 768, is neither categorically nor functionally the equivalent of the disqualifying offense of rape listed in Section 504(a) of the Act.  That violation may have affected the race for Executive Board positions.

## III.    FACTUAL AND LEGAL BACKGROUND

### A.  Statement of Facts

Local 1694 is a local labor organization within the meaning of the Act.  (D.I. 18 (Defendant's Answer ("Ans.")) ¶ 6.)  As such, its procedures for nominating and electing union officers are subject to the provisions of Title IV of the Act, 29 U.S.C. §§ 481-83.  (Ans. ¶ 8.)  Local 1694 conducted an election of officers on May 7, 2019, for the offices of President, Vice President, Recording Secretary, Financial Secretary, Business Agent, three Executive Board Members, and three Auditing Committee Members.  (Ans. ¶¶ 1, 8.)  At the time of that election, Local 1694 had approximately 200 members who were employed by three entities operating within the Port of Wilmington – Gulftainer USA, Murphy Marine Services, and Delaware River Stevedores.  (Ans. ¶ 7.)  Among those members were Gary Lewis, Wilbert Harris, Mahinde Ogungbuyi, and Benjamin Wing, each of whom were members in good standing.  (Declaration of Jesse Wenger ("Wenger Decl.") Ex. A (Ashe Report of Interview) p. 5; Ex. B (Mardon Letter) p. 3; Ex. C (Farrell

2

Letter); Ex. D. (Wing Eligibility Letter); *see also* Declaration of Gary Lewis ("Lewis Decl.") ¶ 22; Declaration of Mahinde Ogungbuyi ("Ogungbuyi Decl.") ¶ 17.)

In or around March 2008, the International Longshoremen's Association placed Local 1694 into a trusteeship and appointed trustees to oversee the union.  (Lewis Decl. ¶ 8.)  That trusteeship was lifted in summer 2010, following Local 1694's June 2010 officer election.  (Lewis Decl. ¶ 9; Wenger Decl. Ex. J p. 3 (DOL 2010 Statement of Reasons).)  During the trusteeship, in or around February 2010, Local 1694 amended its bylaws to add a candidate eligibility requirement providing that "[n]o person who has been employed as a superintendent, foreman, or assistant foreman within the twenty-four months immediately preceding the nominations meeting shall be eligible to run for office" (hereinafter the "24-Month Rule").  (Ans. ¶ 21; Wenger Decl. Ex. E (2010 Bylaw Approval Letter); Ex. F (Bylaws).)  The appointed trustees conducted Local 1694's regularly scheduled officer elections in 2010.  (Ans. ¶ 22; Wenger Decl. Ex. G (Rule (30)(b)(6) Depo. Tr.) p. 35:2-7.)

The combined Nominations and Election Notice sent to Local 1694's membership prior to its 2010 officer elections did not reference the 24-Month Rule and Local 1694 did not fully enforce the 24-Month Rule for the 2010 election.  (Lewis Decl. ¶¶ 12-14; Ogungbuyi Decl. ¶ 10; Wenger Decl. Ex. G p. 45:17-20.)  In fact, Defendant's combined Nominations and Election Notice for the 2010 election informed its members that anybody then holding a supervisory position had to "immediately resign his or her position . . . to be eligible to run for office."  (Lewis Decl. ¶ 13 & Ex. 2.)  That requirement was both consistent with Defendant's past practice and in line with the International Longshoremen's Association's constitution.  (Wenger Decl. Ex. H (ILA Constitution) p. 24.)  Local 1694 member Gary Lewis, for example, who had been employed as a superintendent, foreman, or assistant foreman within the twenty-four months preceding

3

nominations for the 2010 election, was permitted to run as a candidate for office. (Lewis Decl. ¶¶ 12-14; Wenger Decl. Ex. I (2010 Election Results).)

Local 1694's trusteeship was lifted in August 2010 following the installment of its newly elected officers. (Lewis Decl. ¶ 9; Wenger Decl. Ex. J.) Local 1694 subsequently conducted its regularly scheduled officer elections in 2013 and 2016. (Ans. ¶¶ 24-25.) Local 1694 did not enforce the 24-Month Rule during the 2013 or 2016 elections. (Ans. ¶¶ 24-25.)

In March 2019, Defendant mailed its members a combined Notice of Nominations and Election in advance of its regularly scheduled May 2019 election. (Ans. ¶ 26.) That notice included, for the first time, a recitation of the 24-Month Rule. (Lewis Decl. ¶ 16; Ans. ¶ 27.) Defendant's notice in March 2019 that it intended to enforce the 24-Month Rule for the first time was inadequate to allow its members an opportunity to come into compliance with the candidate requirement prior to the May 2019 election. (Lewis Decl. ¶¶ 16-19.)

Despite Defendant's move to enforce the 24-Month Rule, Defendant did not take adequate steps to ensure that it could enforce that rule uniformly. Local 1694, for example, did not obtain employment records from its members' employers to determine which of its members met the 24-Month Rule's requirements. (Ans. ¶ 29.) Moreover, a different union member could serve as the foreman or assistant foreman on any given day and Defendant did not track that information. (Wenger Decl. Ex. G pp. 49:19-50:4.) As a consequence, Local 1694 failed to apply the rule uniformly. It disqualified four members from running for office because of the 24-Month Rule but permitted three other members to run for office – Deion Brown, Diane Smith-Wooden, and Rosa Banner – despite the fact that those three individuals had been employed as a superintendent, foreman, or assistant foreman within the 24 months immediately preceding the May 2019 election. (Ans. ¶¶ 30-31; Wenger Decl. Ex. K (2019 Election Results).) Rosa Banner was elected to both

4

the Executive Board and the Auditing Committee, but later resigned after it was discovered she had not been eligible to run for office.  (Ans. ¶¶ 32-33.)

Local 1694 also retroactively determined that member Benjamin Wing was ineligible to run for office based on a criminal conviction that it asserted disqualified him from running for union office pursuant to Section 504(a) of the Act.  (Ans. ¶¶ 39-40.)  Wing had nominated himself for an Executive Board position at an April 2016 meeting, but, later that month, Defendant mailed his nominations acceptance letter to the incorrect address.  (Ans. ¶¶ 35-36; Wenger Decl. Ex. D.)  As a result of Defendant's mailing error, Wing was errantly left off the ballot for the May 2019 election.  (Ans. ¶¶ 38-39.)  Wing thereafter protested the results of the election.  (Ans. ¶ 10.)  On July 5, 2019, in response to Wing's protest, Defendant admitted that it had previously deemed Wing eligible, acknowledged its mailing error, and retroactively determined that Wing was ineligible to hold office because of a disqualifying conviction covered by Section 504(a) of the Act.  (Ans. ¶ 39.)  Wing's prior conviction for unlawful sexual contact in the second degree – the basis for his alleged ineligibility – is not a conviction covered by Section 504(a) of the Act.  (*See* Ans. ¶ 40; D.I. 10 at p. 4); *see also* 29 U.S.C. § 504(a).  Local 1694 maintains no policy that bars its members from running for office on the basis of a criminal conviction not listed in Section 504(a).  (Wenger Decl. Ex. G p. 53:12-18.)

Following the 2019 Election, four Local 1694 members filed letters with the union protesting the election:  Gary Lewis and Wilbert Harris on May 9, 2019; Benjamin Wing on May 13, 2019; and Mahinde Ogungbuyi on May 17, 2019.  (Ans. ¶¶ 9-11; Wenger Decl. Ex. B p. 2.)  Complainants Lewis, Harris, Wing, and Ogungbuyi each properly exhausted the International Longshoremen's Association's internal protest procedures and timely filed complaints with the Secretary.  (Wenger Decl. Ex. B pp. 1-3.)  Complainants Lewis, Harris, and Ogungbuyi each

5

complained that they were deprived of the opportunity to run for office because of Defendant's unreasonable application of the 24-Month Rule.  (Wenger Decl. Ex. L (Lewis Complaint); Ex. M (Harris Complaint); Ex. N (Ogungbuyi Complaint).)

Pursuant to Section 601 of the LMRDA, 29 U.S.C. § 521, and in accordance with Section 402(b) of the LMRDA, 29 U.S.C. § 482(b), Plaintiff investigated the union members' complaints and found probable cause that Local 1694 had violated Title IV of the LMRDA and that hose violations may have affected the outcome of the May 7, 2019, election.  (Wenger Decl. Ex. O (October 2019 DOL Letter); D.I. 1 ¶ 43.)

### B.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Facts are material when they "could affect the outcome" of the case, and a dispute over a material fact is only "'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party."  *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).  The moving party can support its motion by "citing to particular parts of materials in the record, including depositions, documents . . . , affidavits or declarations . . . , admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c).  To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

### C. The Labor-Management Reporting and Disclosure Act of 1959

The principle purpose of the Labor-Management Reporting and Disclosure Act of 1959 is to promote fair and democratic practices in unions. Through the Act, Congress sought to "protect the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self-government, and, through the election process[.]" *Wirtz v. Hotel, Motel & Club Emps. Union, Local 6*, 391 U.S. 492, 497 (1968). Recognizing that free and fair elections are essential to union self-government, Congress enacted the safeguards of Title I and Title IV of the LMRDA "to provide a fair election and to guarantee membership participation." *Am. Fed'n of Musicians v. Wittstein*, 379 U.S. 171, 182 (1964).

Among the protections in Title IV of the LMRDA is Section 401(e), which requires unions to provide a reasonable opportunity for the nomination of candidates and that every member in good standing be eligible to run for office, subject to reasonable qualifications uniformly imposed. 29 U.S.C. § 481(e). Reasonableness is based not only on the face of the qualification, but also on how the qualification is applied in practice. *See* 29 C.F.R. § 452.53 ("Qualifications for office which may seem reasonable on their face may not be proper if they are applied in an unreasonable manner or if they are not applied in a uniform way.").

When a court determines that a union has violated Section 401 of the Act, and that such violation or violations "may have affected the outcome of an election, the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary[.]" 29 U.S.C. § 482(c).

7

## IV.    ARGUMENT

### A. Defendant Unreasonably Applied the 24-Month Rule in the May 2019 Officer Elections Because Defendant Failed to Provide Adequate Notice.

Defendant amended its bylaws in 2010 to include the 24-Month Rule and subsequently chose not to enforce that rule in its 2010, 2013, and 2016 election cycles. Defendant's enforcement of the 24-Month Rule for the first time in the May 2019 officer elections – after providing notice to its members of its intent to enforce that rule only in March 2019 – was unreasonable. Its failure to give its members adequate notice that it would enforce the 24-Month Rule made it impossible for its members to come into compliance prior to the May 2019 officer elections, and as such, violated Section 401(e) of the Act.

Section 401(e) requires unions to provide a reasonable opportunity for the nomination of candidates. 29 U.S.C. § 481(e). So, while it is generally recognized that unions have a legitimate interest in prescribing minimum standards for candidacy and officeholding in the union, *see* 29 C.F.R. § 452.35, whether a particular candidate qualification is reasonable, or is being applied reasonably, depends on whether it is consistent with the Act's purpose to help ensure "free and democratic union elections." *Local 3489, United Steelworkers of Am. v. Usery*, 429 U.S. 305, 309 (1977) (internal quotation marks and citation omitted). Accordingly, a balance must be struck between the union's interest in imposing minimum standards and "the dominant purpose of the Act [which] is to ensure the right of members to participate fully in governing their union[.]" *Donovan v. CSEA Local Union 1000*, 594 F. Supp. 188, 190 (N.D.N.Y. 1984) (quoting 29 C.F.R. § 452.35) (brackets in original), *rev'd on other grounds*, 761 F.2d 870 (2d Cir. 1985). Qualifications for union office "that unduly interfere with a free choice of candidates is at cross-purposes with the Act and therefore are unreasonable." *Donovan v. Sailors' Union of the Pac.*, 739 F.2d 1426, 1429 (9th Cir. 1984).

8

The Department of Labor's regulations state that candidate qualification requirements that seem reasonable on their face "may not be proper if they are applied in an unreasonable manner[.]"[2]   29 C.F.R. § 452.53.   The regulation explains that "[a]n essential element of reasonableness is adequate advance notice to the membership of the precise terms of the requirement."   *Id.*   Numerous courts have highlighted that adequate advance notice of candidate qualification requirements is a vital factor in determining whether a particular qualification was reasonably applied.   *See Donovan v. CSEA Local Union 1000*, 761 F.2d 870, 875 (2d Cir. 1985); *Donovan v. Local 120, Laborers' Int'l Union of N. Am.*, 683 F.2d 1095, 1103-04 (7th Cir. 1982); *Herman v. Sindicato de Equipo Pesado*, 34 F. Supp. 2d 91, 96 (D.P.R. 1998); *Martin v. Local 101, Transport Workers Union*, No. 91-1871, 1992 WL 394175, at \*8 (E.D.N.Y. Dec. 9, 1992).

In determining the reasonableness of a union's application of a candidate qualification, courts consider whether and how a union has applied the qualification in the past.   *Sindicato de Equipo Pesado*, 34 F. Supp. 2d at 96; *cf. Noble v. Sombrotto*, 525 F.3d 1230, 1239 (D.C. Cir. 2008) ("In determining reasonableness, a district court may consider the union's consistent past practices[.]").   For example, in *Herman v. Sindicato de Equipo Pesado*, the court struck down a candidate eligibility rule that was "clearly stated" in the union's constitution and that had been in place "for over twenty years" because the union had never enforced the qualification until the challenged election.   34 F. Supp. 2d at 96.   The court emphasized that "while it [was] true the [requirements] were on the books, never before were they enforced."   *Id.*   In striking down the

---

[2] Although the Department of Labor's regulations are not binding on this Court, courts have generally given the regulations considerable weight.   *See, e.g.*, *Chao v. Bremerton Metal Trades Council*, 294 F.3d 1114, 1122 n.5 (9th Cir. 2002); *BLE Int'l Reform Comm. v. Sytsma*, 802 F.2d 180, 190 (6th Cir. 1986); *Donovan v. Nat'l Transient Div., Int'l Bhd. of Boilermakers*, 736 F.2d 618, 621 (10th Cir. 1984); *cf. Sec'y U.S. Dep't of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420, 427 (3d Cir. 2017).

relevant qualification, the court stressed the importance of "adequate advance notice" and explained that "the selectivity of [the union's] enforcement clearly [ran] counter to the aim of the LMRDA." *Id.* (citation omitted).

The record in this case demonstrates that there is no genuine dispute of material fact that Defendant failed to provide its members a "reasonable opportunity" for the nomination of candidates when it imposed the 24-Month Rule on its membership for the first time in 2019 on less than three months' notice. Defendant has admitted that it did not enforce the 24-Month Rule during the 2013 and 2016 officer elections. (Ans. ¶¶ 24-25.) Those were the two elections preceding the 2019 election and the only elections Local 1694 conducted itself after exiting its trusteeship in 2010. (Wenger Decl. Ex. G p. 45:12-20.) Moreover, the record establishes that the 24-Month Rule was not enforced during Defendant's regularly scheduled election in 2010. The combined Nominations and Election Notice sent to Local 1694's membership in 2010 did not reference the 24-Month Rule. (Lewis Decl. ¶¶ 12-14 & Ex. 2.) In fact, it expressly permitted any person "employed as a superintendent, foreman or assistant foreman" to run for office so long as "he or she . . . immediately resign[ed] his or her position[.]" (Lewis Decl. Ex. 2.)

The fact that the 24-Month Rule was not enforced during Defendant's 2010 officer election is reinforced by the declarations of union members Gary Lewis and Mahinde Ogungbuyi. Lewis has declared that the Union decided not to enforce the 24-Month Rule during the 2010 election following a complaint he filed with a fellow union member. That complaint stressed that enforcing a 24-month time constraint on union membership on less than 24 months' notice was not "reasonable notice." (Lewis Decl. Ex. 1 p. 3.) According to Lewis, Defendant and its trustees subsequently allowed union members to run for office in 2010 even if they had held supervisory

10

positions in the preceding 24 months.[3] (Lewis Decl. ¶¶ 12-14.) Ogungbuyi has similarly declared that Defendant chose not to enforce the 24-Month Rule during the 2010 election after Lewis contested the rule's prospective enforcement. (Ogungbuyi Decl. ¶¶ 9-10.)

The undisputed facts therefore demonstrate that Defendant's enforcement of the 24-Month Rule during the May 2019 officer elections violated Section 401(e) of the Act because Local 1694 failed to provide its membership a "reasonable opportunity" to come into compliance with that eligibility requirement. Reasonable application of the 24-Month Rule would have required Defendant to notify its membership in early 2017 of its intent to enforce the 24-Month Rule during the 2019 election cycle. No union member could have reasonably predicted in early 2017 that they would have to forego pursuing supervisory positions over the next two years to preserve their eligibility for office in 2019. To the contrary, the only indication Defendant's members ever had between the 24-Month Rule's incorporation into Local 1694's Bylaws in 2010 and early 2019 was that Defendant would *not* enforce the rule, just as the trustees did *not* enforce the rule in 2010 and just as Defendant did *not* enforce the rule in the two elections it ran in 2013 and 2016.

A qualification applied in a manner that does not afford a union member "a reasonable opportunity" to run for office is, by definition, unreasonable. Courts, therefore, regularly find that a union has violated Section 401(e) of the Act when it imposes a requirement that its members cannot comply with prior to the relevant election. For example, in *Reich v. Local 1, American*

[3] Plaintiff anticipates that Defendant will argue that the 24-Month Rule was enforced during the 2010 election. Not one document produced by Defendant supports that proposition and its corporate designee – current Local 1694 President William B. Ashe, Jr. – testified during a Rule 30(b)(6) deposition that he could not speak "at all" on whether the 24-Month Rule was enforced in 2010 because he did not run that election. (Wenger Decl. Ex. G p. 45:14-20.) Moreover, Defendant could not have lawfully applied the 24-Month Rule, adopted in February 2010, to an election that same year. Such enforcement would have been patently unreasonable under the LMRDA.

11

*Postal Workers' Union*, one month prior to the union's 1993 election, the union notified its members that it would impose a new meeting attendance rule, requiring that all nominees attend at least three union meetings between the posting of the 1990 election results and the upcoming 1993 election of officers. No. 93-5167, 1994 WL 110610, at *1 (N.D. Ill. Mar. 31, 1994). However, the union notified its members of the meeting attendance rule when there was only one remaining meeting that members could attend. *Id.* The court in *Local 1* held that the union's retroactive application of the meeting attendance rule was "clearly unreasonable" because members had inadequate advance notice to comply with the rule. *Id*. at *5. *See also Herman v. N.Y. Metro Area Postal Union*, 30 F. Supp. 2d 636, 645-50 (S.D.N.Y. 1998) (explaining that disclosing candidate requirement after date by which members could have complied was unreasonable under the Act). Local 1694 similarly applied its 24-Month Rule in a way that made it impossible for its members to come into compliance prior to the election. As such, Defendant violated Section 401(e) of the Act by failing to provide its members a "reasonable opportunity" to run, or be nominated, for office. 29 U.S.C. § 481(e).

The unreasonable manner in which Defendant imposed the 24-Month Rule failed to promote free and democratic elections, failed to promote full participation in the governance of the union, and disregarded the rights of the rank-and-file members, in violation of Section 401(e) of the Act.

### B. Defendant Failed to Uniformly Impose the 24-Month Rule.

Not only did Defendant apply the 24-Month Rule in an unreasonable manner, but undisputed facts demonstrate that it also failed to impose that rule uniformly in violation of Section 401(e). That provision demands that "reasonable qualifications" be "uniformly imposed." 29 U.S.C. § 481(e); *see also* 29 C.F.R. § 452.53. Defendant failed to uniformly impose the 24-Month

12

Rule because it did not take the necessary steps to allow for a uniform application of that rule and, as a predictable consequence, applied the rule inconsistently to different union members.

Candidate eligibility requirements that are not applied uniformly violate the LMRDA. *See, e.g.*, *Chao v. Amalgamated Transit Union*, 141 F. Supp. 2d 13, 21-22 (D.D.C. 2001) (finding candidate eligibility requirement to violate the uniform application provision of Section 401(e) when the union imposed different eligibility requirements on members of its public sector unions and on members of its private sector unions); *Usery v. Local 2047, Int'l Bhd. of Elec. Workers*, No. 3-75-Civ-20, 1976 WL 1684, at *2 (D. Minn. Nov. 24, 1976) (finding a Section 401(e) violation when the union ignored a candidate qualification requirement for two members but enforced the requirement as to a third member).

Here, Defendant has admitted that it failed to take the necessary steps that could have allowed it to apply the 24-Month Rule uniformly because it did not track which of its members served as superintendents, foremen, or assistant foremen on any given day and it did not obtain records from its members' employers that would have allowed it to determine candidate eligibility based on the 24-Month Rule. (Ans. ¶ 29; Wenger Decl. Ex. G pp. 49:19-50:4.) Nonetheless, Defendant intentionally chose to enforce the 24-Month Rule despite failing to take steps that would have made it possible to uniformly apply the rule. It is therefore unsurprising that Defendant has further admitted that, in practice, it failed to uniformly impose the 24-Month Rule during the 2019 election. There is no dispute that Defendant disqualified Gary Lewis, Wilbert Harris, Anthony Sammons, and Benjamin Jeffcoat from running for union office on the basis of the 24-Month Rule but permitted Deion Brown, Diane Smith-Wooden, and Rosa Banner to run for office despite the fact the latter three individuals had been employed as a superintendent, foreman, or assistant foreman within the 24 months immediately preceding the May 2019 election. (Ans. ¶¶ 30-31;

13

Wenger Decl. Ex. K.)   Brown received votes as a candidate for Vice President, Smith-Wooden received votes as a candidate for Executive Board, and Banner was successfully elected to both the Executive Board and Auditing Committee.[4]  (Wenger Decl. Ex. K.)

Defendant's failure to have adequate safeguards in place to ensure uniform application of the 24-Month Rule violated its statutory obligation to ensure that its candidate eligibility requirement could be uniformly applied to all candidates.  Its subsequent failure to uniformly apply that rule resulted in supposedly ineligible candidates appearing on the ballot for union office.  That is an independent violation of the Act.  *See, e.g., Herman v. Local 1695, United Auto., Aerospace & Agric. Implement Workers of Am.*, 111 F. Supp. 2d 602, 610 (E.D. Pa. 2000) (finding violation of Title IV of the Act when union permitted ineligible candidate to appear on ballot); *Herman v. Am. Postal Workers Union*, 995 F. Supp. 1, 4 (D.D.C. 1997) (same).

The undisputed facts therefore establish that Defendant violated Section 401(e) of the Act by failing to uniformly apply the 24-Month Rule.

### C. Defendant Improperly Deemed Benjamin Wing Ineligible to Run for Office Because Wing's Past Conviction Did Not Qualify as Rape under Section 504 of the Act.

Wing was eligible to run for union office because his past conviction for unlawful sexual contact in the second degree ("the Conviction"), in violation of 11 Del. C. § 768, was not a disqualifying conviction under Section 504 of the Act as it is neither categorically nor functionally the equivalent of rape.  Defendant's decision to retroactively deem Wing ineligible to run for an Executive Board officer position as a result of the Conviction unreasonably denied Wing the right to run for office and therefore violated Section 401(e) of the Act.

---

[4] Banner later resigned after Defendant realized it had improperly allowed her to run for office. (Ans. ¶ 33.)

Section 401(e) requires that every union member in good standing be eligible to run for and hold union office, subject only to the requirements set out in Section 504 of the Act and other "reasonable qualifications uniformly imposed." 29 U.S.C. § 481(e). Section 504, in turn, prohibits anyone convicted of certain enumerated crimes from serving as an officer, director, employee, or representative of a labor organization for thirteen years from the date of conviction or the date such person completed his sentence, whichever is later. *Id.* § 504(a). One of those enumerated crimes is rape. *Id.* A willful violation of Section 504 carries criminal penalties, including imprisonment for up to five years. *Id.* § 504(b); *see also United States v. Beros*, 833 F.2d 455, 466 (3d Cir. 1987) ("Section 504 is a criminal statute[.]").

Federal courts routinely resort to the categorical approach when analyzing criminal statutes, like Section 504, that condition criminal penalties on the nature of an individual's prior criminal conviction. *See, e.g.*, *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (discussing categorical approach in context of the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*); *Descamps v. United States*, 570 U.S. 254, 257 (2013) (discussing categorical approach in context of the Armed Career Criminal Act, 18 U.S.C. § 924(e)); *United States v. Abdullah*, 905 F.3d 739, 744 (3d Cir. 2018) (discussing categorical approach in context of the United States Sentencing Guidelines). Under the categorical approach, a past conviction can only serve as a qualifying offense sufficient to trigger the application of a statute when the elements of the past offense are the same as, or narrower, than the generic federal definition of the offense enumerated in the statute. *See Williams v. Att'y Gen.*, 880 F.3d 100, 104 (3d Cir. 2018). The actual facts underpinning the prior conviction do not matter; courts must presume that the prior offense was committed "by engaging in no more than the minimum conduct criminalized by the state statute." *Abdullah*, 905 F.3d at 744 (internal quotation marks and citations omitted). Importantly, under the

15

categorical approach, we presume that "Congress referred only to [the relevant enumerated offenses'] generic versions—not to all variants of the offenses." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

Wing was a member in good standing of Local 1694. (Ans. ¶¶ 39-40; Wenger Decl. Ex. B p. 3 & Ex. D.) The Act therefore required that he be permitted to run for office unless he was disqualified under Section 504 or if he did not otherwise meet a reasonable qualification. Defendant's sole basis for deeming Wing ineligible to run for office was disqualification under Section 504 because of the Conviction. (*See* Ans. ¶¶ 40-41; *see also* D.I. 10 at pp. 4, 8-9.) The statute under which Wing was convicted, however, prohibits a broader set of conduct than generic rape, and as such, the Conviction does not trigger application of Section 504.

At the time the Act was passed in 1959, the federal offense of "rape" "relie[d] upon its common law meaning to supply the necessary elements and definitions." *Perez-Gonzalez v. Holder*, 667 F.3d 622, 626 (5th Cir. 2012). Essential elements of common law rape include proof of sexual intercourse, the use of force by the offender, and an absence of consent by the victim. *See United States v. Rider*, 282 F.2d 476, 477 (9th Cir. 1960) (citing *Williams v. United States*, 327 U.S. 711 (1946)). The Delaware state crime of unlawful sexual contact in the second degree, 11 Del. C. § 768, contains none of those elements and indisputably prohibits a broader set of conduct than generic rape.

Section 768 provides that:

> A person is guilty of unlawful sexual contact in the second degree when the person intentionally has sexual contact with another person who is less than 18 years of age or causes the victim to have sexual contact with the person or a third person. Unlawful sexual contact in the second degree is a class F felony.

11 Del. C. § 768. The Delaware Code, in turn, defines "sexual contact" as:

> (1) Any intentional touching by the defendant of the anus, breast, buttocks or genitalia of another person; or

16

> (2) Any intentional touching of another person with the defendant's anus, breast, buttocks, semen, or genitalia; or
>
> (3) Intentionally causing or allowing another person to touch the defendant's anus, breast, buttocks or genitalia which touching, under the circumstances as viewed by a reasonable person, is intended to be sexual in nature. *"Sexual contact" shall also include touching when covered by clothing.*

11 Del. C. § 761.  In short, one could be convicted under § 768 for intentionally touching the breast or buttocks of a minor over the minor's clothes.  Section 768 is simply broader than generic rape and cannot serve as a qualifying conviction under Section 504.[5]

Before courts began to apply the categorical approach to a broader set of statutes, courts assessing whether a non-enumerated offense triggered Section 504 asked whether the non-enumerated offense was the functional equivalent of the listed offense.  *See United Union of Roofers, Waterproofers & Allied Workers, Union No. 33 v. Meese*, 823 F.2d 652, 655 (1st Cir. 1987) (explaining that "the federal courts have uniformly held that the list of common law crimes [in Section 504] includes convictions under statutes that *substantially* cover the conduct listed in [Section 504]" (emphasis in original)); *United States v. Romero*, No. 09-00260(A)-R, 2013 WL 12086229, at *1 (C.D. Cal. Apr. 9, 2013) (citing cases and explaining that courts have held that Section 504(a) covers the listed crimes and their functional equivalents); *Berman v. Local 107, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 237 F. Supp. 767, 772 (E.D. Pa. 1964) (concluding a state offense was disqualifying because it was the "equivalent" of an offense listed in Section 504).  As such, were the Court not to apply the categorical approach to its analysis of Section 504, it would have to assess whether § 768 is the functional equivalent of rape as that term was intended by Congress in 1959.  It is not.

---

[5] Whether § 768 is divisible and therefore subject to the modified categorical approach, *see Mathis*, 136 S. Ct. at 2249, is not relevant here.  Any violation of § 768 requires "sexual contact" and it is primarily Delaware's definition of "sexual contact" that results in § 768 criminalizing a broader universe of conduct than generic rape.

17

"It is a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses." *Sekhar v. United States*, 570 U.S. 729, 732 (2013). Here, when Congress incorporated the term "rape" into Section 504, it meant common law rape. As discussed above, the conduct proscribed by § 768 is not the functional equivalent of common law rape.

Although the Department of Labor's regulations allow a labor organization to adopt eligibility standards stricter than those set forth in Section 504(a), *see* 29 C.F.R. § 452.34, Defendant has admitted that it has not done so. (Wenger Decl. Ex. B p. 10 & Ex. G p. 53:8-18.) Defendant only considers those prior convictions expressly covered by Section 504(a) as barring a member from running for office. (Wenger Decl. Ex. G p. 53:8-18.) Because the Conviction was not a barrable offense under Section 504(a), Defendant's retroactive decision to disqualify Wing based on the Conviction violated Section 401(e) of the Act.

### D. Defendant's Title IV Violations May Have Affected the Outcome of the May 7, 2019, Election.

Section 402(c) of the Act requires a court to declare a challenged election void and order a new election under the Secretary's supervision if the court finds by "a preponderance of the evidence" that violations "may have affected the outcome of an election[.]" 29 U.S.C. § 482(c). The Supreme Court, after examining the Act's legislative history, concluded that Congress rejected a showing of actual effect on an election because "[t]he difficulty [of] proving such an actuality" would have had the effect of "rendering the proposed 'remedy practically worthless[.]'" *Hotel, Motel & Club Emp. Union, Local 6*, 391 U.S. at 506 (quoting 105 Cong. Rec. 19765). Importantly, once the Secretary has established a Section 401 violation, a prima facie case is established that the violation may have affected the outcome and the burden shifts to the union to prove the results of the election would have been the same absent the violation. *Id.* 506-07. A union can only rebut

18

a prima facie case through "tangible evidence" that the violation did not affect the outcome; it cannot rely on mere speculation or conjecture. *Id.* at 507-08.

When a union's violation has deprived its membership of a "reasonable opportunity" to become candidates for office, the "burden on the union is so great" as to be virtually "insurmountable." *Usery v. Int'l Org. of Masters, Mates & Pilots, Int'l Marine Div.*, 422 F. Supp. 1221, 1226 (S.D.N.Y. 1976), *aff'd in part, modified in part on other grounds*, 538 F.2d 946 (2d Cir. 1976); *see also Hotel, Motel & Club Emp. Union, Local 6*, 391 U.S. at 508. That is the case here. Plaintiff has established that Local 1694 deprived its membership of a reasonable opportunity to become candidates for office when it enforced the 24-Month Rule without adequate notice. Although there is no way to determine how Defendant's decision to depart from its past practice and enforce the 24-Month Rule affected its members' decisions to run for office or nominate others to run for office, we do know that violation prevented otherwise eligible candidates from seeking union office. There is simply no way for Defendant to rebut the presumption that its violation may have affected the outcome of the May 7, 2019, election for the offices of President, Vice President, Recording Secretary, Financial Secretary, Business Agent, three Executive Board Members, and three Auditing Committee Members.

Moreover, Plaintiff has also established that Local 1694 violated Section 401(e) by failing to take the necessary steps to uniformly impose that rule and by subsequently allowing ineligible candidates to run for the offices of Vice President, Executive Board, and Auditing Committee. Defendant's failure to take appropriate steps to verify its candidate eligibility requirement may have affected the outcome of every race run on May 7, 2019, as there is no knowing whether the candidates allowed to run were, in fact, eligible. At a minimum, Defendant's admission that it permitted ineligible candidates to run for the offices of Vice President, Executive Board, and

19

Auditing Committee demonstrates that its violation may have affected the outcome of those races because the presence of their names on the ballot took votes away from other candidates.

Last, Plaintiff has established that Local 1694 violated Section 401(e) when it improperly disqualified Wing as a candidate for Executive Board based the Conviction. That violation affected the outcome of the Executive Board race.

Local 1694's actions in connection with its May 2019 election violated the LMRDA. Its members have been subject to illegally elected leadership ever since. The Act is structured to further "the statutory purpose to insure expeditious and effective resolution of union election disputes and irregularities." *Donovan v. Blasters, Drillrunners & Miners Union, Local No. 29*, 521 F. Supp. 595, 598 (S.D.N.Y. 1981); *see also* 29 U.S.C. § 482. As such, the Secretary respectfully requests a prompt resolution to this matter to remedy the rightful grievances of Defendants' members caused by Local 1694's violations of Section 401(e) of the Act.

## V.    CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court grant Plaintiff's Motion for Summary Judgment; declare Local 1694's May 7, 2019, election void; and direct Defendant to conduct new elections under the Secretary's supervision.

Respectfully submitted,
DAVID C. WEISS
United States Attorney

By:    /s/ Jesse S. Wenger
Jesse S. Wenger
Assistant U.S. Attorney
1313 N. Market Street
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277

20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MILTON AL STEWART,<br>Acting Secretary of Labor,<br>United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>LOCAL 1694, INTERNATIONAL<br>LONGSHOREMEN'S ASSOCIATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **Civil Action No. 19-2235-RGA** |

### [proposed] ORDER

**AND NOW,** this _____ day of _____, 2021, upon consideration of Plaintiff's Motion for Summary Judgment, and all the papers filed in support thereof and in opposition thereto, **it is hereby ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED**. The Court has concluded that Defendant Local 1694, International Longshoremen's Association ("Local 1694") has violated section 401(e) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 481(e), in its regular periodic election of officers on May 7, 2019, by (i) unreasonably applying the candidate eligibility requirement set forth in Article X of its Bylaws (the "24-Month Rule"), (ii) failing to uniformly apply the 24-Month Rule, and (iii) improperly deeming Benjamin Wing ineligible to run for office based on a prior conviction not listed in section 504(a) of the LMRDA, 29 U.S.C. § 504(a), and that those violations may have affected the outcome of the races for the offices of President, Vice President, Recording Secretary, Financial Secretary, Business Agent, three Executive Board Members, and three Auditing

Committee Members.  The statutory remedy for such violations is to declare the May 7, 2019, election for those offices void and direct a new election under Plaintiff's supervision.

Accordingly, **IT IS FURTHER ORDERED** that:

1.    In accordance with 29 U.S.C. § 482(a), all officers of Local 1694 may continue to conduct the affairs of Local 1694 until a new election is completed;

2.    In accordance with 29 U.S.C. § 482(c), Local 1694 shall conduct new elections for the offices of President, Vice President, Recording Secretary, Financial Secretary, Business Agent, three Executive Board Members, and three Auditing Committee Members, under the supervision of Plaintiff, no later than sixty (60) days from the issuance of this order, with the successful candidates for those offices serving in their respective positions until the conclusion of the next regularly-scheduled elections for those offices.

3.    The supervised election shall be conducted in accordance with Title IV of the LMRDA, 29 U.S.C. § 481, *et seq.*, and, insofar as lawful and practicable, in accordance with Local 1694's Constitution and Bylaws.

4.    All decisions as to the interpretation and application of Title IV of the LMRDA, the International Longshoremen's Association Constitution, and Local 1694's Bylaws relating to the supervised election are to be determined by the Secretary, and his decisions shall be final and binding, subject to review by the Court.

5.    The Court shall retain jurisdiction of this action, and after completion of the supervised election, the Secretary shall certify to the Court the name of the persons so elected, and that such election was conducted in accordance with Title IV of the LMRDA, and insofar as lawful and practicable, in accordance with the provisions of Local 1694's Constitution and Bylaws.  Upon

approval of such certification, the Court shall enter a Judgment declaring that such persons have

been elected as shown by such certification, and then close the case, pursuant to 29 U.S.C. § 482(c).

_____
HONORABLE RICHARD G. ANDREWS
UNITED STATES DISTRICT JUDGE

3