IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EUGENE SCALIA, Secretary of Labor,
United States Department of Labor,

        *Plaintiff,*

     v.

                                   No. 19-cv-02235-SB

LOCAL 1694, INTERNATIONAL
LONGSHOREMEN'S ASSOCATION,

        *Defendant.*

---

Jesse S. Wenger, David C. Weiss, U.S. ATTORNEY'S OFFICE, Wilmington, Delaware.

                                        *Counsel for Plaintiff.*

Lance M. Geren, Kathleen Bichner, O'DONOGHUE & O'DONOGHUE, LLP, New Castle, Delaware.

                                     *Counsel for Defendant.*

---

MEMORANDUM OPINION

May 13, 2021

BIBAS, *Circuit Judge*, sitting by designation.

Unions may establish eligibility requirements for their officers. But they must give sufficient notice of these rules and apply them evenly. Local 1694 did not do so in its most recent election. So the Secretary of Labor claims that it must hold a new one. Because the Secretary has shown that the union violated federal labor law and that the material facts are not in dispute, I will grant his motion for summary judgment.

## I. Background

Local 1694, International Longshoremen's Association, is a labor organization covered by the Labor-Management Reporting and Disclosure Act. 29 U.S.C. § 402(i), (j); Compl. ¶ 6, D.I. 1; Answer ¶ 6, D.I. 18. The Secretary of Labor argues that it violated the Act during its May 2019 election. Compl. ¶¶ 1, 44–47.

In February 2010, the union added a new candidate eligibility requirement to its bylaws: "No person who has been employed as a superintendent, foreman or assistant foreman *within the twenty-four (24) months* immediately preceding the nominations meeting shall be eligible to run for office." D.I. 34-1, Ex. F, at 9 (emphasis added); Compl. ¶ 21; Answer ¶ 21. But in the June 2010 election, it did not enforce the 24-month rule. Instead, it told members that "[n]o person who is employed as a superintendent, foreman, or assistant foreman shall be eligible to hold office." D.I. 35-1, Ex. 2. Anyone who currently held such a position could immediately resign and be eligible. *Id.* In the next officer elections in 2013 and 2016, the union again did not enforce the rule. Compl. ¶¶ 24–25; Answer ¶¶ 24–25.

Even though the union had not followed the 24-month rule before, it decided to apply the rule for the first time in its May 2019 election. D.I. 34-1, Ex. A, at 10. In March, two months before the election, it sent members a notice that included the eligibility rule. Compl. ¶¶ 26–27; Answer ¶¶ 26–27. And the union disqualified four members under it. Compl. ¶ 30; Answer ¶ 30. Another member, also a supervisor, asked the union if he was eligible after getting the notice. D.I. 36, ¶¶ 5, 12–13. A union official told him that he was not, so he did not run. *Id.* ¶ 13. But three other members, who all served in supervisory positions within twenty-four months prior to the election, were able to run. Compl. ¶ 31; Answer ¶ 31. One of them was elected; after the union discovered her ineligibility, it asked her to resign. Compl. ¶¶ 32–33; Answer ¶¶ 32–33.

After the election, three members—Gary Lewis, Wilbert Harris, and Mahinde Ogungbuyi—filed protest letters with the union. They complained that the 24-month rule had unreasonably prevented them from running for office. D.I. 34-1, Exs. L, M, N. Another member, Benjamin Wing, protested because, after the union sent his nomination acceptance letter to the wrong address, it mistakenly left him off the ballot. Compl. ¶¶ 35–39; Answer ¶¶ 35–36, 39. The union responded to his protest by retroactively deeming him ineligible, claiming that he had a disqualifying criminal conviction under § 504(a) of the Act. Compl. ¶ 40; Answer ¶ 40.

Each member properly exhausted the union's internal protest procedures and timely filed complaints with the Secretary. D.I. 34-1, Ex. B, at 15–16. The Secretary investigated them and found probable cause that the union violated Title IV of the

Act, 29 U.S.C. §§ 481–83, and that the errors may have affected the outcome of the election. Compl. ¶ 43. He seeks a judgment voiding the results and ordering a new election under his supervision. *Id.* at 8. Judge Andrews denied the union's motion to dismiss. D.I. 16. Now the Secretary moves for summary judgment. I may grant the motion if there is no genuine dispute of material fact and if the Secretary is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## II. THE UNION MUST CONDUCT A NEW ELECTION UNDER THE SECRETARY'S SUPERVISION

Section 401(e) of the Act requires unions to give members a "reasonable opportunity" to nominate candidates. And every union member in good standing must be eligible to run and hold office, "subject to section 504 of this title and to reasonable qualifications uniformly imposed." 29 U.S.C. § 481(e). The Secretary says the union's election violated these requirements in three ways. First, he contends that it did not give adequate notice of the enforcement of the 24-month rule. Second, he points to the union's failure to uniformly apply the rule. Finally, he argues that the Local improperly disqualified Wing. The Local disputes only the first alleged violation; it is silent on the others. It has not raised any genuine dispute of material fact. Nor has it tried to rebut the presumption that the proven violations could have affected the election results. So I must order it to conduct a new election.

### A. The union applied the 24-month rule unreasonably and inconsistently

The Secretary argues that members did not have a "reasonable opportunity" to comply with the 24-month rule and so become eligible for office. I agree.

"An essential element of reasonableness [of an election qualification] is adequate advance notice to the membership of the precise terms of the requirement." *Donovan v. CSEA Local Union 1000, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, 761 F.2d 870, 875 (2d Cir. 1985) (quoting 29 C.F.R. § 452.53); *see also Herman v. N.Y. Metro Area Postal Union, AFL-CIO*, 30 F. Supp. 2d 636, 645–50 (S.D.N.Y. 1998) (finding a Section 401(e) violation where a union did not provide sufficient notice of a facially reasonable deadline).

The union did not give adequate notice here. Since adopting the rule in 2010, it had never enforced it. So even though the rule was in the bylaws, for nine years members had no reason to believe the union would follow it. They could not have known that they had to resign from their supervisory positions in 2017 if they wanted to run in 2019. The union does not claim that it told members before March 2019 that it planned to enforce the rule. Two months' notice of a rule that would require resignation two years earlier is hardly enough.

The union tries to create a factual dispute by claiming that the rule *was* enforced in 2010, save for its "retroactive component." Def.'s Br. 13, D.I. 37. But the retroactive component—that members who served in supervisory positions *in the past twenty-four months* are ineligible—is simply the rule itself. And the union's insistence that the rule is reasonable is irrelevant. *Id.* at 12. The Secretary does not challenge the rule's substance, only the manner of its enforcement. Similarly, the union's focus on previous challenges to the rule is misplaced. *Id.* at 11. True, the Department of Labor "blessed" the rule when it was promulgated, so long as it was not applied in that

election cycle. *Id.* at 12; D.I. 38, Ex. K, at 65. But it did not say that all future applications of the rule would necessarily be reasonable. Indeed, the Department's refusal to let the union apply the rule in the first election cycle suggests that it was worried about the exact notice concern present here. So the current suit, based only on the May 2019 election, is not "[p]recluded" because the earlier complaints failed. Def.'s Br. 11.

Finally, the union insists that Lewis, one of the complainants, is an unreliable witness because of his longstanding disputes with the union. But the Secretary does not rely solely on Lewis. *See, e.g.*, D.I. 36 (Ogungbuyi declaration). He is not the lone source of the undisputed facts that prove the Section 401(e) violation.

Either way, the union does not—and cannot—argue that it applied the rule "uniformly," as the Act requires. It disqualified multiple members under the rule. Yet it admits that it let three members run even though they were ineligible under the same rule. *See Hugler v. Local 689, Amalgamated Transit Union*, 266 F. Supp. 3d 855, 862 (D. Md. 2017) (finding a violation when a union did not uniformly apply an eligibility rule). Indeed, the union did not get members' employment records to check who served as a supervisor, nor could its corporate designee testify to any system in place to ensure eligibility. Compl. ¶ 29; Answer ¶ 29; D.I. 34-1, Ex. G, at 60–63. By failing to apply the rule equally, and not even trying to do so, the union violated the Act. *Wirtz v. Local 191, Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 226 F. Supp. 179, 186 (D. Conn. 1964).

**B. The union improperly disqualified Wing**

Union members convicted of certain serious crimes, including rape, cannot hold office for thirteen years after their conviction or release from prison. 29 U.S.C. § 504(a). Under this rule, the union retroactively disqualified Wing, pointing to his conviction for second-degree unlawful sexual contact. 11 Del. C. § 768; D.I. 10, at 9. The Secretary argues that this crime is not "rape" for purposes of § 504(a). The union has no response. I agree with the Secretary.

Section 504 is a criminal statute; it authorizes criminal penalties. *United States v. Beros*, 833 F.2d 455, 466 (3d Cir. 1987). It does not define "rape." When a federal criminal statute "use[s] words of established meaning without further elaboration," courts look to their common-law definition. *Williams v. Att'y Gen.*, 880 F.3d 100, 105 (3d Cir. 2018). When the Act was passed in 1959, common-law rape was understood as the commission of sexual intercourse by force and without consent. *See United States v. Rider*, 282 F.2d 476, 477 (9th Cir. 1960) (citing *Williams v. United States*, 327 U.S. 711 (1946)); *see also Rape, Black's Law Dictionary* (11th ed. 2019) (def. 1) ("At common law, unlawful sexual intercourse committed … against [the victim's] will.").

The definition of second-degree unlawful sexual contact in Delaware is broader: a person is guilty when he "intentionally has sexual contact with another person who is less than 18 years of age or causes the victim to have sexual contact with the person or a third person." 11 Del. C. § 768. Sexual contact includes "[a]ny intentional touching" of the victim's (or with the defendant's) "anus, breast, buttocks, semen, or genitalia," clothed or unclothed. § 761.

The Secretary urges me to apply the categorical approach: the past conviction can serve as a qualifying offense under § 504(a) only if its elements match those of the generic crime. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). Delaware's statute prohibits intentional touching as opposed to sexual intercourse; it is not a categorical match of rape. The Secretary, however, cites no case that applies the categorical approach to § 504(a). Instead, courts traditionally ask whether the union member was convicted under a statute that "*substantially* cover[s] the conduct listed in the disqualification statute." *United Union of Roofers, Waterproofers & Allied Workers, Union No. 33 v. Meese*, 823 F.2d 652, 655 (1st Cir. 1987) (collecting cases). Even under this test, Wing's crime does not qualify. Common-law rape requires forcible penetration, while unlawful sexual contact requires mere contact. So a conviction for unlawful sexual contact in Delaware is not a conviction for rape as understood at common law. Indeed, Delaware charges the latter crime under separate statutes. *See* 11 Del. C. §§ 770–73 (covering a person who "intentionally engages in sexual intercourse with another person").

So under either approach, Wing's conviction is not a qualifying offense under § 504(a). The union violated the Act by deeming him ineligible retroactively.

### C. These violations may have affected the election

If a court finds by a "preponderance of the evidence" that violations may have affected the electoral results, it must declare the election void and order a new one to be conducted under the Secretary's supervision. 29 U.S.C. § 482(c). Once the Secretary proves that the union violated Section 401, he has established a prima facie case that the violation may have affected the outcome. *Wirtz v. Hotel, Motel & Club Emps.*

*Union, Local 6*, 391 U.S. 492, 506–07 (1968). The Secretary has made his required showing. So the burden shifts to the union to prove otherwise. *Id.* Its brief is silent on this point. So I must conclude that any of the three violations may have had an effect. I will void the results and order the union to run a new election.

* * * * *

The union violated the Act by applying the 24-month rule unreasonably and disqualifying one of its members improperly. Each violation may have affected the outcome. So I grant summary judgment for the Secretary. The May 2019 election results are void, and the union must conduct a new election under the Secretary's supervision.